Randall B. Bateman (USB 6482)
BATEMAN IP
299 South Main Street, Suite 1300
Salt Lake City, UT 84111
(801) 533-0320
rbb@batemanip.com; nbladen@batemanip.com

*Attorneys for Defendants/Counterclaimants Kamyab Ghatan and Oeagrus, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| THE NECK HAMMOCK, INC., a Delaware Corporation,<br><br>            Plaintiff,<br>      vs.<br><br>OEAGRUS, INC., a Canadian Corporation and KAMYAB GHATAN, a resident of Canada, and DOES 1-10,<br><br>            Defendants. | **ANSWER TO FIRST AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, COPYRIGHT INFRINGEMENT, DESIGN PATENT INFRINGEMENT AND UTILITY PATENT INFRINGEMENT**<br><br>Case No. 2:19-cv-00501-DAK |

Defendants Kamyab Ghatan ("Ghatan") and Oeagrus, Inc. ("Oeagrus") hereby answer the

First Amended Complaint as follows:

### FIRST DEFENSE

Each cause of action in the First Amended Complaint fails to state a claim upon which

relief can be granted.

### SECOND DEFENSE

Defendants Ghatan and Oeagrus answer the allegations of the First Amended Complaint

as follows:

1.      Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 1 of the First Amended Complaint and therefore deny the allegations thereof.

2.      Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 2 of the First Amended Complaint and therefore deny the allegations thereof.

3.      Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 3  of the First Amended Complaint and therefore deny the allegations thereof.

4.      Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 4 of the First Amended Complaint and therefore deny the allegations thereof.

5.      Defendants Ghatan and Oeagrus admit that the neck hammock sold by Plaintiff includes a hammock which engages the back of a user's head to apply traction to the user's head and neck and that Plaintiff's product, as set forth in the claims, uses a plurality of shock absorbing cords as set forth in paragraph 5 of the First Amended Complaint, and otherwise denies the allegations thereof.

6.      Defendants Ghatan and Oeagrus admit that the application of force on the hammock by the plurality of elastic chords in the neck hammock sold by Plaintiff applies traction to the vertebrae of the spine, and especially those of the neck, as set forth in paragraph 6 of the First Amended Complaint, and otherwise deny the allegations thereof.

7.      Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 7 of the First Amended Complaint and therefore deny the allegations thereof.

8.      Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 8 of the First Amended Complaint and therefore deny the allegations thereof.

9.      Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 9 of the First Amended Complaint and therefore deny the allegations thereof.

10.     Defendants deny the allegations of paragraph 10 of the First Amended Complaint.

11.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 11 of the First Amended Complaint and therefore deny the allegations thereof.

12.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 12 of the First Amended Complaint.

13.     Defendants Ghatan and Oeagrus admit that Plaintiff has filed an action in an attempt to stop Defendants from selling competing products, but otherwise deny the allegations of paragraph 13 of the First Amended Complaint.

## THE PARTIES

14.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 14 of the First Amended Complaint and therefore deny the allegations thereof.

15.     Defendants Ghatan and Oeagrus admit Ghatan is the owner of Oeagrus and otherwise deny the allegations of paragraph 15 of the First Amended Complaint.

16.     Defendants Ghatan and Oeagrus admit the allegations of paragraph 16 of the First Amended Complaint.

17.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 17 of the First Amended Complaint.

## JURISDICTION

18.     Defendants Ghatan and Oeagrus submit that the allegations of paragraph 18 of the First Amended Complaint are legal conclusions and require no response.

19.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 19 of the First Amended Complaint.

20.     Defendants Ghatan and Oeagrus admit that Oeagrus sells through Amazon.com and otherwise denies the allegations of paragraph 20 of the First Amended Complaint.

21.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 21 of the First Amended Complaint and therefore deny the allegations thereof.

22.     Defendants Ghatan and Oeagrus admit the allegations of paragraph 22 of the First Amended Complaint.

23.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 23 of the First Amended Complaint.

24.     Defendants Ghatan and Oeagrus admit that there are other neck hammocks and other devices for traction and otherwise deny the allegations of paragraph 24 of the First Amended Complaint.

25.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 25 of the First Amended Complaint and therefore deny the allegations thereof.

26.     Defendants Ghatan and Oeagrus admit that Plaintiff has patents and trademark registrations but deny the validity of the same and otherwise deny the allegations of paragraph 26 of the First Amended Complaint.

27.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 27 of the First Amended Complaint and therefore deny the allegations thereof.

28.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 28 of the First Amended Complaint and therefore deny the allegations thereof.

29.     Defendants Ghatan and Oeagrus admit that Oeagrus sold neck hammocks which it purchased from third parties with no knowledge of any alleged rights of Plaintiff and otherwise deny the allegations of paragraph 29 of the First Amended Complaint.

**FIRST CAUSE OF ACTION**
**Trademark Infringement**
**15 U.S.C. § 1114**

30.     Defendants Ghatan and Oeagrus incorporate their responses to paragraphs 1 through 29 as if set forth herein.

31.     Defendants Ghatan and Oeagrus admit that Plaintiff has trademark registrations that were improperly registered because Plaintiff's product is a hammock for the neck and the term neck hammock is generic or merely descriptive and not a proper trademark, and otherwise deny the allegations of paragraph 31 of the First Amended Complaint.

32.     Defendants Ghatan and Oeagrus admit that Plaintiff obtained the registrations shown in Exhibits A, B and C to the First Amended Complaint, note that the trademark registrations were improperly registered because Plaintiff's product is a hammock for the neck and neck hammock is generic or merely descriptive for the goods, and otherwise deny the allegations of paragraph 32 of the First Amended Complaint..

33.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 33 of the First Amended Complaint.

34.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 34 of the First Amended Complaint.

35.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 35 of the First Amended Complaint.

5

36.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 36 of the First Amended Complaint.

37.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 37 of the First Amended Complaint.

38.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 38 of the First Amended Complaint.

39.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 39 of the First Amended Complaint.

40.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 40 of the First Amended Complaint.

**SECOND CAUSE OF ACTION**
**Unfair Competition**
**15 U.S.C. § 1125(a)**

41.     Defendants Ghatan and Oeagrus incorporate their responses to paragraphs 1 through 40 as if set forth herein.

42.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 42 of the First Amended Complaint in that Neck Hammock cannot serve as a trademark, as it describes exactly what the product is, a hammock to relieve neck pain, making the purported mark generic or merely descriptive.

43.     Defendants Ghatan and Oeagrus admit that Plaintiff obtained trademark registrations from the United States Patent and Trademark Office and otherwise deny the allegations of paragraph 43 of the First Amended Complaint.

44.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 44 of the First Amended Complaint.

45.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 45 of the First Amended Complaint.

46.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 46 of the First Amended Complaint.

47.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 47 of the First Amended Complaint.

48.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 48 of the First Amended Complaint.

49.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 49 of the First Amended Complaint.

50.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 50 of the First Amended Complaint.

## THIRD CLAIM FOR RELIEF
### Infringement of the '260 Copyright
### 17 U.S.C. § 106 *et seq.*

51.     Defendants Ghatan and Oeagrus incorporate their responses to paragraphs 1 through 50.

52.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 52 of the First Amended Complaint and therefore deny the allegations thereof.

53.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 53 of the First Amended Complaint and therefore deny the allegations thereof.

54.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 54 of the First Amended Complaint.

55.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 55 of the First Amended Complaint.

56.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 56 of the First Amended Complaint.

57.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 57 of the First Amended Complaint.

58.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 58 of the First Amended Complaint.

59.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 59 of the First Amended Complaint.

**FOURTH CAUSE OF ACTION**
**Infringement of the '284 Patent**
**35 U.S.C. § 271**

60.     Defendants Ghatan and Oeagrus incorporate their responses to paragraphs 1 through 59.

61.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 61 of the First Amended Complaint and therefore deny the allegations thereof.

62.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 62 of the First Amended Complaint and therefore deny the allegations thereof.

63.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 63 of the First Amended Complaint and affirmatively allege that the assertion of infringement is made in bad faith.

64.     The allegations of paragraph 64 of the First Amended Complaint call for a legal conclusion and are therefore denied by Defendants Ghatan and Oeagrus.

65.     The allegations of paragraph 65 of the First Amended Complaint call for a legal conclusion and are therefore denied by Defendants Ghatan and Oeagrus.

66.     The allegations of paragraph 66 of the First Amended Complaint call for a legal conclusion and are therefore denied by Defendants Ghatan and Oeagrus.

67.     The allegations of paragraph 67 of the First Amended Complaint call for a legal conclusion and are therefore denied by Defendants Ghatan and Oeagrus.

68.     The allegations of paragraph 68 of the First Amended Complaint call for a legal conclusion and are therefore denied by Defendants Ghatan and Oeagrus.

69.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 69 of the First Amended Complaint, and affirmatively allege that the assertion is made in bad faith as Plaintiff is aware that Oeagrus' product uses a single elastic band.

70.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 70 of the First Amended Complaint, and affirmatively allege that the assertion is made in bad faith as Plaintiff is aware that Oeagrus' product uses a single elastic band.

71.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 71 of the First Amended Complaint, and affirmatively allege that the assertion is made in bad faith as Plaintiff is aware that Oeagrus' product uses a single elastic band.

72.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 72 of the First Amended Complaint.

73.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 73 of the First Amended Complaint.

74.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 74 of the First Amended Complaint.

75.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 75 of the First Amended Complaint.

76.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 76 of the First Amended Complaint.

**FIFTH CAUSE OF ACTION**
**Infringement of the 'D305 Patent**
**35 U.S.C. § 271**

77.     Defendants Ghatan and Oeagrus incorporate their responses to paragraphs 1 through 76 as if set forth herein.

78.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 78 of the First Amended Complaint and therefore deny the allegations thereof.

79.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 79 of the First Amended Complaint and therefore deny the allegations thereof.

80.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 80 of the First Amended Complaint, and note that the photographs shown therein do not accurately represent Oeagrus' product as sold.

81.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 81 of the First Amended Complaint.

82.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 82 of the First Amended Complaint.

83.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 83 of the First Amended Complaint.

84.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 84 of the First Amended Complaint.

85.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 85 of the First Amended Complaint.

**SIXTH CAUSE OF ACTION**
**Infringement of the 'D305 Patent**
**35 U.S.C. § 271**

86.     Defendants Ghatan and Oeagrus incorporate their responses to paragraphs 1 through 85 as if set forth herein.

87.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 87 of the First Amended Complaint and therefore deny the allegations thereof.

88.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 88 of the First Amended Complaint and therefore deny the allegations thereof.

89.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 89 of the First Amended Complaint and affirmatively note that the photographs of Oeagrus' product do not show Oeagrus' product as sold.

90.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 90 of the First Amended Complaint.

91.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 91 of the First Amended Complaint.

92.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 92 of the First Amended Complaint.

93.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 93 of the First Amended Complaint.

94.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 94 of the First Amended Complaint.

**SEVENTH CAUSE OF ACTION**
**Infringement of the 'D494 Patent**
**35 U.S.C. § 271**

95.     Defendants Ghatan and Oeagrus incorporate their responses to paragraphs 1 through 94 as if set forth herein.

96.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 96 of the First Amended Complaint and therefore deny the allegations thereof.

97.     Defendants Ghatan and Oeagrus lack information or belief as to the allegations of paragraph 97 of the First Amended Complaint and therefore deny the allegations thereof.

98.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 98 of the First Amended Complaint and affirmatively note that the photographs of Oeagrus' product do not show Oeagrus' product as sold.

99.     Defendants Ghatan and Oeagrus deny the allegations of paragraph 99 of the First Amended Complaint.

100.    Defendants Ghatan and Oeagrus deny the allegations of paragraph 100 of the First Amended Complaint.

101.    Defendants Ghatan and Oeagrus deny the allegations of paragraph 101 of the First Amended Complaint.

102.    Defendants Ghatan and Oeagrus deny the allegations of paragraph 102 of the First Amended Complaint.

103.    Defendants Ghatan and Oeagrus deny the allegations of paragraph 103 of the First Amended Complaint.

WHEREFORE, Defendants prays this Honorable Court for:

A.      Judgment that Defendants have not infringed any trademark of Plaintiff;

B.      Judgment that Defendants have not engaged in unfair competition against Plaintiff;

C.      Judgment that Defendants have not infringed any patent rights of Plaintiff;

D.      Judgment that Defendants have not infringed any copyrights of Plaintiff.

## AFFIRMATIVE DEFENSES

## THIRD DEFENSE

Plaintiff's claims are barred because Defendants have not infringed any valid trademarks rights of Plaintiff.

## FOURTH DEFENSE

Plaintiff's claims are barred because Defendants have not engaged in any unfair competition or infringed any valid trademarks rights of Plaintiff.

## FIFTH DEFENSE

Plaintiff's claims are barred because Defendants have not infringed any valid copyrights of Plaintiff.

## SIXTH DEFENSE

Plaintiff's claims are barred because Defendants have not infringed any patent rights of Plaintiff.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants have no trademark rights in the words neck hammock.

## EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants did not copy Plaintiff's materials.

## NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the '284 Patent is invalid for failure to comply with one or more of U.S.C. §§ 101, 102, 103 and 112.

## TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the 'D035 Patent is invalid for failure to comply with one of more of U.S.C. §§ 101, 102, 103 and 112.

## ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the 'D492 Patent is invalid for failure to comply with one or more of U.S.C. §§ 101, 102, 103 and 112.

## TWELFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the 'D494 Patent is invalid for failure to comply with one or more of U.S.C. §§ 101, 102, 103 and 112.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because, on information and belief, Plaintiff failed to disclose material prior art to the U.S. Patent and Trademark Office.

## FOURTEENTH DEFENSE

The Plaintiff's claims are barred, in whole or in part, under the doctrine of laches at least for the reason that Plaintiff waited an unreasonable amount of time to assert its claims and thereby prejudiced the ability of the Defendants to collect evidence demonstrating their defenses.

## FIFTEENTH DEFENSE

The Plaintiff's claims are barred, in whole or in part, due to Plaintiff's unclean hands in dealing with Defendants, including shutting down Defendants' sales channels by asserting trademark rights which it knew or should have known were without merit.

## SIXTEENTH DEFENSE

The Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

15

### SEVENTEENTH DEFENSE

The Plaintiff's claims are barred, in whole or in part, in that some or all of any damage suffered by Plaintiff is due to the acts of third parties.

### EIGHTEENTH DEFENSE

The Plaintiff's claims for enhanced damages are barred, in whole or in part, as Defendants were acting in good faith and with the understanding that they were not infringing any rights of Plaintiff.

### NINTEENTH DEFENSE

The Plaintiff's claims for damages are limited because, based on information and belief, Plaintiff failed to mark its product in accordance with the Patent Act.

### TWENTIETH DEFENSE

The Plaintiff's claims for damages are limited to the extent that Defendants' sales occurred before the issuance of any patent which may have been infringed.

### RESERVATION OF DEFENSES

Defendants further reserve the right to raise additional defenses or claims as they are discovered during discovery.

### COUNTERCLAIM

### Parties

1.      Counterclaimant Ghatan is an individual residing in Ontario, Canada.

2.      Counterclaimant Oeagrus is a Canadian corporation with its place of business in Ontario, Canada.

3.      Counterclaim Defendant The Neck Hammock (TNH") is a Delaware corporation having its principle place of business in Utah.

## Jurisdiction and Venue

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1338(a), 2201 and 2202.  Personal jurisdiction is present, as Counterclaim Defendant has a place of business in this district and has filed suit against the Counterclaimants in this district.

5.      Venue is proper under 28 U.S.C. § 1400(a), because Plaintiff is found in this district.

## General Allegations

**A.      Trademarks**

6.      TNH purports to be the owner of trademark rights for the mark NECK HAMMOCK and asserts three U.S. Trademark Registrations for THE NECK HAMMOCK, NECK HAMMOCK and NECK HAMMOCK (& Design) U.S. Trademark Reg. No. 5,439,768, 5,557,079 and 5,626,795.

7.      TNH's product is a device for relieving stress which includes a strap, a pair of bungie straps and a neck hammock.  The hammock is attached to bungie straps which are connected to a strap which engages a door handle.  A visual from TNH's instructions for use identify the relevant parts:



.

8.     The user then places his or her head and upper neck in the hammock as shown below:



8.     TNH has asserted that Counterclaimants and others have infringed their trademarks by marketing products as "Neck Hammocks" or "Head Hammocks," (First

Amended Complaint, ¶ 29) despite these terms being merely descriptive of the product, as TNH's own instructions demonstrate.

9.      During the prosecution of U.S. Trademark Application 87/500,910, which became U.S. Trademark Reg. No. 5,439,768, TNH conceded that the word NECK in THE NECK HAMMOCK was merely descriptive by stipulating to the entry of a disclaimer.

10.     During prosecution of the '910 application, it does not appear that the Examining Attorney did a common law search for use of the term HAMMOCK, including TNH's own instructions.

11.     During the prosecution of U.S. Trademark Application No. 87/693,381, which became U.S. Trademark Reg. No. 5,557,079, TNH conceded that the word NECK in NECK HAMMOCK and design was merely descriptive by stipulating to the entry of a disclaimer.

12.     During prosecution of the '381 application, it does not appear that the Examining Attorney did a common law search for use of the term HAMMOCK, including TNH's own instructions.

13.     During the prosecution of U.S. Trademark Application No. 87/883,842, which became U.S. Trademark Reg. No. 5,626,795, TNH conceded that the word neck in NECK HAMMOCK and design was merely descriptive by stipulating to the entry of a disclaimer.

14.     During prosecution of the '381 application, it does not appear that the Examining Attorney did a common law search for use of the term HAMMOCK, including TNH's own instructions.

15.     As evidenced by TNH's own instructions, a hammock is a piece of fabric or woven rope which is suspended at the ends and used as a bed for some object.

16.     The use of the term hammock for suspended material used to hold a part of another object is commonplace.

17.     Since at least the early 2000s, devices for suspending parts of a human body have been referred to as hammocks.

18.     For example, at least as early as 2005, Arjo Sling was selling "leg hammocks."



**BARIATRIC LOOP DIVIDED LEG HAMMOCK SLING SWL 409KG/900LBS**

| Order ref | Size | |
|-----------|------|---|
| MAV1895 | Medium | |
| MAV1896 | Large | |
| MAV1897 | X Large | |
| MAV1898 | Extra Extra Large | |

**BARIATRIC LOOP BASIC HAMMOCK SLING SWL 409KG/900LBS**

| Order ref | Size | |
|-----------|------|---|
| MAV1890 | Medium | |
| MAV1891 | Large | |
| MAV1892 | Extra Large | |
| MAV1893 | Extra Extra Large | |

A copy of Arjo's 2005 catalog is attached hereto as Exhibit A.

19.     In 2005, the U.S. Patent and Trademark Office issued U.S. Patent No. 6,839,927 ('927 Patent) for a "Neck and Head Hammock."  A copy of the '927 patent is attached hereto as Exhibit B.

20.     In 2009, Gypsy Enterprises, LLC sought to obtain a trademark registration for HEAD HAMMOCK for "A head hammock for use in flight on an airplane to allow a person to sleep comfortably in an upright position."  The mark was refused as being generic.  A copy of the File history for U.S. Trademark Application 77/861,775 is attached as Exhibit C.

21.     By 2011, a "HEAD HAMMOCK TRAVELER" was being sold to travelers to support their heads while on airplanes.  A screenshot of a June 1, 2011 review posted on Dave's Travel Corner is attached hereto as Exhibit D.

22.     The company which created the HEAD HAMMOCK TRAVELER attempted to obtain a trademark registration for the name of its product, but the U.S. Patent and Trademark Office refused registration because the name was merely descriptive.  A copy of the office action and the final office action are attached hereto as Exhibit E.

23.     On March 5, 2015, the United States Patent and Trademark Office published U.S. Patent Pub. 2015/0061340 for a "Head Hammock."  A copy of which is attached hereto as Exhibit F.

24.     In January of 2017, Nicolas Zakashefski filed a trademark application for the mark HEAD HAMMOCK for a head support.  The application was refused registration on the principle register because the mark was merely descriptive.  A copy of the office action refusing registration is attached hereto as Exhibit G.

25.     By 2012, Youtube videos showed how to make a laptop hammock.



The video posted March 11, 2012 can be found at

https://www.youtube.com/watch?v=ye_Myek22n8.

26.     The common use of hammock to refer to a suspended piece of material, and in particular parts of the human body, is not limited to leg hammocks and head hammocks.  On September 21, 2011, Travel and Leisure magazine an article entitled "Best Economy-Class Innovations," which included a discussion of the economy class seats on Qantas' A380 aircraft which replaced a footrest with a foot hammock.  Exhibit H.

27.     By 2014, "foot hammocks" had become common and were sold by companies such as FUUT,



28.     By January 2015, a Kickstarter campaign had been launched for "The Foot

Hammock."



29.     The U.S. Patent and Trademark Office granted a trademark registration for the

THE FOOT HAMMOCK design logo, but required a disclaimer of the term "foot hammock"

because the phrase was merely descriptive or generic.  A copy of the trademark registration for

THE FOOT HAMMOCK is attached hereto as Exhibit I.

30.     Long before the use of THE NECK HAMMOCK by TNH, multiple companies

were selling foot hammocks to relieve stress in the feet and legs.  Many foot hammocks look

remarkably similar to the neck hammocks sold by TNH.



31.     Moreover, traction devices for relieving neck strain were referred to as hammocks well before any use by TNH.  During the prosecution of the '284 Patent, the Examiner found many of the claims unpatentable over U.S. Patent Pub. 2014/0249461 ("the Bissell Application"), which was filed in March 2013.  A copy of the published Bissel Application is attached hereto as Exhibit J.

32.     The Bissel application taught that a "frame **3** supports a hammock **4** to suspend the head of a patient's body **2** during use of the apparatus." (Paragraph 0031).



33.     As admitted by TNH's own product user instructions, TNH's product is a

hammock for relieving stress in, among other places, the neck.



https://neckhammock.com/ (emphasis added)

34.     The term "neck hammock" for a hammock to relieve stress in the neck is merely

descriptive, if not generic.

35.     The three asserted trademark registrations granted by the U.S. Patent and

Trademark Office are invalid because the marks are not registerable without a showing of

acquired distinctiveness.

36.     TNH was aware of the use of the term hammock to describe devices which held

body parts to relieve stress, but neither informed the U.S. Patent and Trademark Office of the use

nor disclaimed the term hammock from the mark.

37.     Despite knowing of the use of hammock to describe similar devices, TNH used its purported trademark rights to shut down thousands of product listings from Amazon.com and other websites.

### B. Patents

38.     Steven Sudell filed a provisional patent application for a Portable Traction Device With Sling on or about August 12, 2016.

39.     The patent application taught a sling assembly (i.e. a hammock) 100 attached to a first flexible tether (i.e., a first elastic chord 175/205) and a second flexible tether (i.e., a second elastic chord 180/210).



FIG. 5



FIG. 3

39.     On information and belief, Sudell publicly disclosed his invention more than 1 year prior to the filing date of the provisional patent application.

40.     On or about January 25, 2018, the provisional patent application was assigned to TNH.

41.     On or about June 6, 2018, TNH filed a non-provisional patent application (U.S. Pat. App. 16/008,247 (the '247 Application").

42.     On September 20, 2018, the Examiner at the U.S. Patent and Trademark Office issued an office action rejecting claims 1-5, 8 and 11-18.  Claims 11-13, 15 and 16 were rejected as being anticipated by U.S. Patent Pat. Pub. 2014/0249461 (the Bissel Application).  The Examiner asserted that the hammock discussed in the Bissel Application was the same as the sling claimed in TNH's application.

43.     The office action also rejected claims 1, 2, 5, 8 and 14 as being obvious over Bissel et al. in view of Heinz et al. (U.S. Patent Pub. 2005/0249461).

44.     In order to overcome the rejection of claims 1 and 11, TNH added the following language:

"wherein the anchor comprises:

an anchor tab;

an anchor connector operable to selectively attach to second ends of the flexible elastic tethers; and

an anchor strap disposed between and connecting the anchor tab to the anchor connector."

45.     TNH is aware that Oeagrus' neck hammock uses a single elastic chord and therefore cannot meet the language of claim 1 of the '284 patent.  Moreover, the amendment to the claims to overcome the prior art rejection prevents TNH from asserting infringement under the doctrine of equivalents because the language emphasizes that the two or more "flexible elastic tethers" must be used and that the connection must be made at the "second ends" of the tethers.

46.     Because TNH is aware that Oeagrus' neck hammock using only a single flexible chord, the infringement allegation is made in bad faith and in an attempt to improperly exclude Oeagrus from selling its product.

47.     TNH has asserted infringement of U.S. Design Patent No. D824,035 and compared the patent and Oeagrus' product as follows:



48.     TNH asserted infringement of U.S. Design Patent No. D824,492 and compared

the patent and Oeagrus' product as follows:



49.     TNH asserted infringement of U.S. Design Patent No. D845,494 and compared

the patent and Oeagrus' product as follows:



50.     The photograph's of Oeagrus' product as sold is not accurately shown in the First Amended Complaint.  Rather, TNH has modified the location of the side pads in an attempt to make the design look more similar to what is shown in TNH's patents.



**FIRST CAUSE OF ACTION**
**Petition for Cancellation of Trademark Registrations**
**15 U.S.C. § 1064**

51.     Counterclaimants incorporate the allegations of paragraphs 1-50 as if fully set forth herein and further allege:

52.     TNH sells a hammock which is designed to support a user's head and neck.

53.     By using medical sounding terminology, TNH was able to obtain a registration of the marks THE NECK HAMMOCK, NECK HAMMOCK and NECK HAMMOCK (& Design) from the U.S. Patent and Trademark Office.

54.     The words "neck hammock" for TNH's product is generic, as the product is a neck hammock.

55.     The words "neck hammock" for TNH's product is merely descriptive, as it merely describes the purpose of the product – a hammock for the neck.

56.     TNH's own instructions for use refer to the fabric piece as a hammock and indicate that the design is to relieve neck pain.

57.     By TNH's own allegations, numerous parties were using neck hammock to describe substantially identical products within months of TNH's first use of the descriptive term.

58.     Counterclaimants are being injured by the registration of NECK HAMMOCK as evidenced by the present litigation and TNH's attempts to remove those using the mark – including Counterclaimants – from websites such as Amazon.com.

59.     Wherefore, Counterclaimants petition this Court to order the United States Patent and Trademark Office to cancel U.S. Trademark Registration Nos. 5,626,795, 5,439,768 and 5,557,079 as being merely descriptive or generic.

## SECOND CAUSE OF ACTION
### Tortious Interference with Economic Relations

60.     Counterclaimants incorporate the allegations of paragraphs 1-59 as if fully set forth herein and further allege:

61.     TNH sells a hammock which is designed to support a user's head and neck.

62.     TNH is aware that similar structures are referred to as hammocks, as evidenced by the Examiner's use of the word hammock more than 15 times when explaining why the prior art taught the elements of TNH's claims in the application which became the '284 patent.

63.     TNH has asserted that Oeagrus and others are infringing its trademark rights by using the generic/highly descriptive terms "neck hammock" and "head hammock," even though HEAD HAMMOCK is registered on the Supplemental Register to a third party who filed its application five months before TNH filed its first trademark application and seven months before TNH's alleged date of first use.

64.     By using medical sounding terminology in its description, TNH was able to obtain a registration of the marks THE NECK HAMMOCK, NECK HAMMOCK and NECK HAMMOCK (& Design) from the U.S. Patent and Trademark Office.

65.     The words "neck hammock" for TNH's product is generic as the product is a neck hammock.

66.     The words "neck hammock" for TNH's product is merely descriptive as it merely describes the purpose of the product – a hammock for the neck.

67.     Despite knowing that NECK HAMMOCK was not a protectable trademark, TNH used its trademark registrations to interfere with Oeagrus' attempts to sell Oeagrus' products – thereby causing lost sales, and by damaging Oeagrus' reputation with Amazon.com.

68.     Counterclaimants continue to be damaged by TNH's bad faith assertion of trademark rights int NECK HAMMOCK and is entitled to injunctive relief to prevent further harm.

69.     Therefore, Counterclaimants assert a claim for tortious interference with economic relations.

### THIRD CAUSE OF ACTION
**Declaration of Non-Infringement**

70.     Counterclaimants incorporate the allegations of paragraphs 1-69 as if fully set forth herein.

69.     Each of the independent claims of the '284 patent requires the use of flexible elastic tethers, the second ends of which selectively attach to an anchor strap.

70.     The neck hammock sold by Oeagrus using a single elastic cord, one end of which attaches to one side of the hammock and the other end of which attaches to the other side of the hammock.

71.     There is no good faith basis for an allegation that Counterclaimants have infringed the '284 patent.

72.     The depictions made in the First Amended Complaint do not accurately depict Oeagrus' product as sold.

73.     Therefore, Counterclaimants make a claim for declaratory judgment that Counterclaimants have not infringed TNH's utility patent.

## PRAYER FOR RELIEF

Counterclaimants Ghatan and Oeagrus respectfully pray that this Court enter judgment as follows:

1. Judgment ordering cancellation of U.S. Trademark Registration Nos. 5,626,795, 5,439,768 and 5,557,079;

2. Judgment in favor of Ghatan and Oeagrus that finds that TNH engaged in tortious interference with Counterclaimants' economic relations, along with damages in an amount to be determined at trial;

3. Judgment declaring that Counterclaims have not infringed the '284 patent.

4. For a finding that the trademark registrations and the '284 patent were asserted in bad faith, along with an award of Counterclaimants' attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and 35 U.S.C. § 285.

5. For such other relief as the Court sees just.

## JURY DEMAND

Ghatan and Oeagrus demand a jury trial and all matters so triable.

DATED: January 27, 2020.

BATEMAN IP

/s/ Randall B. Bateman
Randall B. Bateman

299 South Main Street, Suite 1300
Salt Lake City, UT 84111

*Attorney for Defendants/Counterclaimants*
*Kamyab Ghatan and Oeagrus, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 27th day of January, 2020 a true and correct copy of

the foregoing **ANSWER TO FIRST AMENDED COMPLAINT FOR TRADEMARK**

**INFRINGEMENT, UNFAIR COMPETITION, COPYRIGHT INFRINGEMENT,**

**DESIGN PATENT INFRINGEMENT AND UTILITY PATENT INFRINGEMENT** was

filed with the court via CM-EFC, which will send notification to the following:

> Brent Lorimer
> Brian N. Platt
> WORKMAN/ NYDEGGER
> 60 East South Temple, Suite 1000
> Salt Lake City, UT 84111
> blorimer@wnlaw.com
> bplatt@wnlaw.com
> *Attorneys for Plaintiff The Neck Hammock, Inc.*

> */s/ Randall B. Bateman*
> Randall B. Bateman

35